[Cite as *State v. Smith*, 2014-Ohio-3420.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No. 100641

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**HENRY SMITH**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-576771-A

**BEFORE:** Boyle, A.J., Rocco, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** August 7, 2014

**ATTORNEY FOR APPELLANT**

Ruth R. Fischbein-Cohen
3552 Severn Road, #613
Cleveland, Ohio   44118

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Glen Ramdhan
Assistant County Prosecutor
1910 Carnegie Avenue, 2nd Floor
Cleveland, Ohio   44115

MARY J. BOYLE, A.J.:

{¶1} Defendant-appellant, Henry Smith, appeals his burglary, petty theft, and criminal damaging convictions. He raises three assignments of error for our review:

1. Henry Smith was deprived of his constitutional rights since trial counsel was ineffective.

2. The court erred by failing to merge the petty theft and burglary.

3. The jury verdict is not supported by sufficient evidence.

{¶2} Finding no merit to his appeal, we affirm.

Procedural History and Facts

{¶3} In August 2013, Smith was indicted on nine counts: burglary, in violation of R.C. 2911.12(A)(2), petty theft in violation of R.C. 2913.02(A)(1), criminal damaging in violation of R.C. 2909.06(A)(1), and six counts of attempted aggravated arson in violation of R.C. 2923.02(A)(1) and 2909.02(A)(2).[1] Smith pleaded not guilty to the charges, and the case proceeded to a jury trial. The following facts were presented at trial.

{¶4} The victim, Shannon Goard, testified that Smith is the father of her two children, ages four and six. Goard and Smith were not married and no longer

---

[1]The jury found Smith not guilty of the aggravated arson charges and, thus, we will omit facts relating to those charges because they are not relevant to this appeal.

lived together, but they still dated "on and off." At the time of the incident, Goard stated they were not "girlfriend boyfriend."

{¶5} Goard lived on the bottom floor of a two-story house. Goard stated that although Smith "always comes and goes," Smith had never lived at this house, nor did he have a key to it. Goard further stated that Smith was not permitted to be in her house without her permission.

{¶6} Goard testified that on July 30, 2013, she was at her "play sister's" house. Smith came there to get gas money off of Goard. Smith and Goard got into a verbal argument, which was "normal" for them. Goard testified that Smith asked for the title to his 2003 Grand Marquis. Goard explained that the Grand Marquis used to be titled in Smith's name, but that it was now titled in her name. Although the car was titled in Goard's name, Smith drove it. Goard refused to give the title to Smith. At that point, Goard left her "play sister's" house and drove home to get the title because she believed that Smith would go to her house to try to get the title.

{¶7} Goard later ended up "hanging out" with some friends, including her friend, Lakeisha Ford. Around 8:00 p.m., Goard decided to drive to her house to get some "corn dogs." Goard's niece, another friend, and Ford were in the car with Goard. When Goard went inside, she noticed that her 32-inch flat-screen television was missing, as well as her Wii system. She called the police. Goard

later learned that one of her windows, on the side of her house opposite the side of her driveway, "was smashed out and the glass was gone."

{¶8} Robert Burton testified that he lives directly across the street from Goard. On the day of the incident, Robert was outside working on a car at the end of his driveway. While he was working on the car, Robert saw Smith driving up the street, slowing down in front of Goard's house. Robert testified that when he looked up "about 15, 20 minutes later," Smith was parked "about four houses down the street." Robert thought this was odd because Smith usually parked in Goard's driveway. Robert knew it was Smith because he knows what car Smith drives, plus he said that he saw Smith get out of the driver's side of the car. Robert said that Smith had another male with him, who got out of the passenger side of the car.

{¶9} Robert testified that he knew that Goard was not home. He saw Smith and the other male walk to Goard's house, "look[ing] back and forth around." Robert then saw the men walk to the back of Goard's house, down her driveway, and then go around to the back of her house. Robert stated that "every now and again," he would see the men come out of the house. At one point, Robert saw the men carrying "a large object" out of the house. Robert said that the object looked like a television, but it was covered with something. Robert then saw Smith carrying a Dollar General bag "that had a whole bunch of different

things in it," that he said, "had to be a console because there was wires and stuff hanging out of it."

{¶10} Robert further testified that at one point, he heard a noise that sounded like "shattered glass." He later clarified that it did not sound like "shatter, but it was like a crack."

{¶11} Robert said that he asked his father, Charles Burton, who lives with Robert and was sitting on the front porch of their house, if he also saw Smith taking things out of Goard's house. After talking to his father, Robert called the police.

{¶12} Charles testified that on the day of the incident, he was sitting on his front porch, drinking coffee, and reading a magazine. Charles stated that while he was sitting on the porch, he noticed "a silver Mercury" driving down the street. Charles said that the car paused in front of Goard's house, drove down the street, went around the block, came back again, "slowly rolled by the house, then went down about four, five houses, turned in the driveway and parked down the street." Charles saw Smith driving the vehicle. Charles stated that he had seen Smith at Gourd's house "several times a week," because Smith would "stop by periodically."

{¶13} Charles explained that he thought it was "out of the ordinary" that Smith parked four or five houses down, because he usually parked in front of Goard's house or in her driveway. Charles thought "something must be up."

Charles further thought it was "odd" that Smith walked behind Goard's house, because he would normally enter through the front door. Charles took a photo of the suspect vehicle and gave it to police.

{¶14} When Smith and the other male walked behind the house, Charles said that he heard the sound of glass breaking. Charles asked Robert, "Did you hear that?" Charles said that he could clearly see the driveway side of Goard's house, but not the other side because there was a large tree blocking his view of that side of the house.

{¶15} Officer Robert Yuhas testified that he observed a window on the side of Goard's home that looked like it had been tampered with, or forced open. The screen to the window was also pushed in.

{¶16} The jury found Smith guilty of burglary, petty theft, and criminal damaging, but not guilty of the attempted aggravated arson charges.

{¶17} The trial court sentenced Smith to an aggregate two years in prison: two years in prison for burglary, 180 days in jail for petty theft, and 90 days in jail for criminal damaging, all to be served concurrent to each other. The trial court further notified Smith that he would be subject to a mandatory term of three years of postrelease control upon his release from prison. It is from this judgment that Smith appeals.

{¶18} We will discuss Smith's arguments out of order for ease of discussion.

## Ineffective Assistance of Counsel

{¶19} In his first assignment of error, Smith argues that his trial counsel was ineffective and, thus, his Sixth Amendment rights were violated.

{¶20} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶21} Smith claims that his trial counsel was ineffective for failing to explain "necessary things" to him about his case. He therefore maintains that he "went into this case blind as to what * * * to expect and how to defend himself."

{¶22} With trial being set for October 23, 2013, defense counsel notified the court on October 18, 2013, that Smith was dissatisfied with defense counsel's performance and was requesting new counsel. Defense counsel explained that Smith was arraigned on August 15, 2013, and that he had met with Smith "on a couple of occasions," with the last one being October 17, 2013. On that day, Smith expressed that he was not happy with counsel's performance. The court asked Smith to address the court about his concerns. Smith stated:

I want a new attorney. Looking for, trying to pay for an attorney. I'm just not pleased with my attorney. I don't see him. He don't answer the phone. Trying to talk to him about the case. He really has nothing to say to me. All he keep telling me, that they have no type of evidence at all. And he said he can't get my hold lifted. He told me he would get my hold lifted, my bond reduced, and I think a plea deal for F5 or something. This is all on the second time I met him. He told me they can't prove an arson at all, they cannot prove it. And then every time I try to talk to him about the case, he asking me what we going to do. He's my lawyer. I'm asking him what are we going to do, and he's not telling me nothing. I'm asking him certain things about the case he don't know.

**{¶23}** Defense counsel responded:

Obviously there have been conversations between myself and my client, and there is attorney-client privilege, which he has, which I'm hesitant to get into specifics about what we discussed.

But what I will say, and the way I handle all of my cases, I meet with my clients, and I explain to them what evidence I believe the state plans presenting at trial.

And often times the case — I inform my client the case is going to be resolved one of three ways, either dismissal by the state, plea bargain or a trial, and the jury or judge will decide what the punishment — whether the state has met their burden of proof.

I try to answer all my client's questions. But as far as predicting an outcome of a case, that's something that I don't do as a lawyer because I've seen cases where I thought the state's case was weak and I still got a conviction. And I've seen cases where the defendant's case was strong and the defendant was still convicted. So I don't like giving my opinions, as far as whether I think how the outcome of the case is going to be.

With respect to my client, he is aware what his rights are. I think he is aware what evidence the state plans on presenting. And

he's aware of what they're offering, as far as trying to resolve this case to a plea bargain.

His position from the very beginning, that he's innocent, he wants to go to trial. We're scheduled for trial and I'm prepared to go to trial. But other than that, I don't know what else I can do to change his feelings about me as representing him.

{¶24} The court then asked defense counsel, "[h]ave you shared the discovery, the evidence in this case, that the state has provided to you through discovery?" Defense counsel responded that he had. Defense counsel further explained that he had read the police reports that are "marked for counsel only." Defense counsel stated that he had informed Smith of the witnesses the state intended to call at trial, as well as the contents of the police reports, and explained to him how the state planned on proving the charges against him.

{¶25} The court then asked defense counsel how long he had been practicing law and how many defendants he had represented. Defense counsel replied that he had been a public defender since 1994, and had tried "hundreds of cases" on behalf of defendants. The court overruled Smith's request for new counsel.

{¶26} Based on the record, Smith has not established that his counsel's performance was ineffective. Even after the trial court denied his request for new counsel, Smith continued to complain to the court about his defense counsel. But in doing so, he only provided the court with more information establishing that his counsel was not ineffective. Smith complained that he had seen his counsel five

times (five times between August 15 and October 18). Smith further argued that his counsel had talked to his mother for an hour on the telephone, more than he had talked to her in person. And Smith further complained to the trial court, "I didn't see my discovery until the beginning of this month." The record establishes that the state responded to Smith's original discovery request on August 21, 2013, but continued to supplement Smith's discovery request, as late as October 1, 2013 and October 18, 2013. We simply cannot say that defense counsel was ineffective for not sharing discovery with Smith until the "beginning" of October.

{¶27} Further, even if we were to agree with Smith that his counsel's performance was ineffective, we do not find that the outcome of Smith's trial would have been different. The state presented overwhelming evidence of Smith's guilt, including testimony from two neutral witnesses who saw Smith and another person carrying items out of the victim's home.

{¶28} Smith further argues that his counsel was ineffective because he did not file a motion to waive costs at sentencing.

{¶29} The statute under which court costs are imposed is R.C. 2947.23. The Ohio Supreme Court has held that R.C. 2947.23 "does not prohibit a court from assessing costs against an indigent defendant; rather it requires a court to assess costs against all convicted defendants." *State v. White*, 103 Ohio St.3d 580,

2004-Ohio-5989, 817 N.E.2d 393, ¶ 8.  After the *White* decision was issued, the

Ohio Supreme Court further stated that:

> Costs must be assessed against all defendants.  R.C. 2947.23; *White*
> at ¶ 8.  However, we also held in *White* that a judge has discretion to
> waive costs assessed against an indigent defendant.  *Id.* at ¶ 14.
> Costs are assessed at sentencing and must be included in the
> sentencing entry.  R.C. 2947.23.  Therefore, an indigent defendant
> must move a trial court to waive payment of costs at the time of
> sentencing.  If the defendant makes such a motion, then the issue is
> preserved for appeal and will be reviewed under an abuse-of-discretion
> standard.  Otherwise, the issue is waived and costs are res judicata.

*State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 23.

{¶30} At Smith's sentencing hearing, the trial court clearly considered

Smith's indigency.  It stated:

> The Defendant is ordered to pay court costs.  I know, Mr.
> Smith, that you are represented by the Public Defender's Office.
> Therefore, at the time of the arraignment in this case, you would have
> asserted that you did not have money for a lawyer or somebody to
> assist you in that regard, but certainly the evidence is, as it's been
> stated here today, that you were working at Cracker Barrel, therefore,
> you have in the past had the ability to pay.  Given your age, I will
> say, and employability, I find that you have the future ability to pay the
> court costs.

**{¶31}** Further, the sentencing entry indicates "defendant indigent," and that the court appointed appellate counsel for Smith.

**{¶32}** From this record, we can reasonably determine that when the trial court sentenced Smith, including ordering him to pay costs, it took into account his indigent status. As such, we cannot say that there is a reasonable probability that the trial court would have waived costs had trial counsel sought a waiver at sentencing. *See State v. Bagwell*, 8th Dist. Cuyahoga No. 96419, 2011-Ohio 5841 (where this court found that defense counsel was not ineffective for failing to request a waiver of court costs based on similar facts).

**{¶33}** Smith's first assignment of error is overruled.

Sufficient Evidence

**{¶34}** In his third assignment of error, Smith argues that his convictions were not supported by sufficient evidence.

**{¶35}** When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶36} To prove that Smith committed burglary under R.C. 2911.12(A)(2), the state had to present evidence that Smith, by force, stealth, or deception trespassed in an occupied structure "that is a permanent or temporary habitation of any person when any person * * * is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]"

{¶37} To prove that Smith committed petty theft under R.C. 2913.02(A)(1), the state had to establish that Smith, "with purpose to deprive" Goard of her property, knowingly obtained or exerted control over Goard's property "[b]eyond the scope of the express or implied consent" of Goard.

{¶38} And to prove that Smith committed criminal damaging under R.C. 2909.06(A)(1), the state had to present evidence that Smith knowingly caused or created a substantial risk of physical harm to Goard's property without Goard's consent.

{¶39} Smith contends that the state failed to present sufficient evidence that he stole any of Goard's property or that he damaged any of her property. He focuses his arguments on the fact that he and Smith had previously lived together, shared bank cards, made purchases together, and shared a vehicle together. Smith even claims that he and Goard purchased the Wii game together. Thus, he argues that the evidence showed that the "items" were as much his as they were Goard's.

**{¶40}** After review, we find that Smith's arguments are not sufficiency arguments. They are actually manifest-weight-of-the-evidence arguments. Despite all of Smith's claims, which assert facts elicited from Goard's cross-examination and cast some doubt on her credibility (according to Smith), the state presented sufficient evidence on direct examination.

**{¶41}** Goard testified that at the time of the incident, she and Smith were not "boyfriend girlfriend." They did not live together. Smith did not have a key to Goard's home, nor was he allowed to be there without her permission. Goard testified that she did not give anyone permission to take her television or her Wii gaming system. Goard also testified that after she discovered her television and Wii system were missing, she learned from her friend that one of her windows was "smashed out and the glass was gone." Prior to that, Goard testified that her windows were not open because they were "painted shut."

**{¶42}** The state also presented evidence from Goard's neighbors, who witnessed Smith park a few houses down from Goard's home, walk to her house, down her driveway, and then behind her house. The neighbors then heard the sound of glass breaking. They then saw Smith and another male carrying a large item out of Smith's house, and then saw Smith carrying a plastic bag out of Goard's house that had wires coming out of it.

**{¶43}** This evidence is sufficient, if believed, to prove beyond a reasonable doubt that Smith broke into Goard's home by breaking a side window and stole her television and Wii gaming system.

**{¶44}** Accordingly, Smith's third assignment of error is overruled.

### Allied Offenses

**{¶45}** In his second assignment of error, Smith argues that the trial court erred when it failed to merge his petty theft and burglary offenses.

**{¶46}** When a defendant's conduct results in the commission of two or more allied offenses of similar import, that conduct can be charged separately, but the defendant can be convicted and sentenced for only one offense. R.C. 2941.25(A). In determining whether offenses merge, we consider the defendant's conduct. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 44. "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id*. at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). If we answer both questions affirmatively, then the offenses are allied offenses of similar import and will be merged. *Johnson* at ¶ 50.

**{¶47}** Smith contends that the trial court committed plain error in imposing separate sentences on the burglary and petty theft convictions when both offenses

arose from the same conduct. We disagree. As this court recently explained in holding that burglary and theft were not allied offenses of similar import, "'once defendant entered the apartment with an intent to commit a felony inside, the crime of burglary was complete.'" *State v. Richardson*, 8th Dist. Cuyahoga No. 100115, 2014-Ohio-2055, quoting *State v. Smith*, 8th Dist. Cuyahoga No. 95243, 2011-Ohio-3051, ¶ 80. Thus, once Smith entered Goard's home without her permission, with the intent to commit a crime, the offense of burglary was complete. Then, when Smith proceeded to take Goard's television and Wii console from her home, he committed the separate offense of petty theft. Based on this record, we cannot say that the trial court erred by imposing separate sentences for the two offenses.

**{¶48}** Smith's second assignment of error is overruled.

**{¶49}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____

_____

MARY J. BOYLE, ADMINISTRATIVE JUDGE

KENNETH A. ROCCO, J., and
TIM McCORMACK,   J., CONCUR