[Cite as *State v. Sutton*, 2015-Ohio-4074.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 102300 and 102302**

---

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# AMY SUTTON

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-14-582703-A and CR-14-582808-B

**BEFORE:** E.A. Gallagher, J., Keough, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 1, 2015

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio 44067


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Timsi Pathak
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1} Defendant-appellant Amy Sutton appeals her convictions for kidnapping, aggravated robbery, felonious assault, burglary and grand theft in the Cuyahoga County Court of Common Pleas. Sutton argues that her trial counsel erred in failing to object to the joinder of certain offenses for trial, that her convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, that the trial court failed to make required findings at sentencing and that the trial court failed to merge certain offenses as allied offenses. For the following reasons, we affirm and remand.

{¶2} On February 24, 2014 Sutton was indicted in CR-14-582808-B for burglary and grand theft. On March 3, 2014 Sutton was indicted in CR-14-582703-A for kidnapping, two counts of aggravated robbery, two counts of felonious assault all with firearm specifications and having weapons while under disability. The state filed a motion to consolidate the two cases for trial. Sutton's attorney did not file a brief in opposition to joinder or otherwise object and the cases were tried together before a jury.

{¶3} The following facts were elicited at trial: On February 7, 2014, Ryan Swanson found an advertisement for escort services placed on a website called "backpage.com" by Sutton, which included photos of Sutton and her phone number. Swanson contacted Sutton via text message and made arrangements to meet for an hour or a half-an-hour sexual encounter for which Swanson was to pay Sutton $100. At the time, Sutton and her boyfriend, Earl Banks, were residing at the home of Donald Tanks, Jr. Sutton instructed Swanson to come to Tanks' home at 4067 East 68th Street in

Cleveland and text her to be let in when he arrived.

{¶4} When Swanson arrived at the home, Sutton let him in the rear door and led him through a kitchen and into a bedroom. Sutton shut the bedroom door behind them and asked for the money. Swanson testified that he placed $100 in an envelope on a dresser and began to undress. Sutton counted the money before beginning to undress as well. Swanson was completely nude and Sutton was in the process of disrobing when Swanson heard a "kick" from outside the room. Swanson testified that the bedroom doorjamb cracked and Earl Banks entered the room. Swanson reached for a handgun which was in his discarded pants. A struggle ensued between Banks and Swanson over control of the gun. The two began wrestling and the fight spilled out of the bedroom and into the kitchen.

{¶5} Donald Tanks testified that he was sleeping in a front bedroom of the residence when he woke to "a lot of noise" and found Swanson, whom he did not know, completely naked and wrestling for control of a gun on the kitchen floor with Banks, whom Tanks knew as Sutton's boyfriend, and Sutton, who was watching the struggle. At Banks' instruction, Tanks struck Swanson over the head with a chair because he did not understand what was happening and was scared. Tanks testified that the wrestling between Banks and Swanson continued until the gun discharged during the struggle and Swanson was shot in the right thigh. In contrast, Swanson testified that Banks gained control of the gun and shot him twice from a distance of ten feet. The medical testimony did not support Swanson's claim that he was shot twice. Swanson also testified that he

was pistol whipped in the head by Banks, a fact that was not part of Tanks' account of the fight.

{¶6} Tanks testified that after Swanson was shot, Banks gained control of the gun and threatened to shoot Swanson in the head before Tanks dissuaded him. Tanks pushed Swanson out of the home and, in response to his pleading, ordered Sutton to give him his car keys. Sutton threw Swanson's car keys outside and left the home with Banks, who was carrying Swanson's gun in a towel.

{¶7} Swanson, still nude and bleeding from a gunshot wound to his thigh, drove from the home in his car and shortly thereafter flagged down a passing police cruiser driven by Cleveland Police Sergeant Bryan Moore. Swanson told Moore that he had been shot and robbed at a gas station at 71st Street and Harvard. However, a police investigation quickly revealed this story to be a fabrication. Swanson admitted that he initially lied to police about the source of his gunshot wound because he did not want his grandmother to learn that he had solicited a prostitute.

{¶8} Neighbors called the police after hearing the gunshot and Tanks remained at the home to provide his account of the encounter. Tanks called Sutton and demanded that she return to the home to speak with police. Sutton told police that she met Swanson on backpage.com and that they had agreed for him to come over and pay her $100 for adult dances and talk. Sutton alleged that when Swanson arrived, he took his clothes off but did not have the agreed upon money and instead pulled out a gun and tried to rob or rape her at gunpoint. According to Sutton, at that point Banks entered the

room and the fight began. She claimed that she did not see the gun go off. Sutton provided police with the name of Dwayne Wilson as her boyfriend.

{¶9} Michael Levine testified that five days later, in the early morning hours of February 12, Sutton and Banks, whom he knew through a mutual friend, were at a home he was renting from his grandmother at 4492 Jewett Avenue in Cleveland. Levine testified that he handles the renting of the units at 4492 Jewett Avenue and Sutton and Banks had expressed an interest in renting the home. Levine anticipated introducing Sutton and Banks to his grandmother and allowed them to spend the night at the home.

{¶10} Levine left the keys to a white Chevy Impala with the license plate "GBW 2832" that his mother had entrusted to him on a TV stand and slept upstairs while Sutton and Banks slept on the ground level. When he woke the next morning the keys and the car, which had been parked in the front yard, were gone. He called and sent text messages to the phone number he had for Sutton and was strung along with promises on February 12 and 13 that the car would be returned. When it was not, he reported the car stolen to police.

{¶11} Although Levine testified that he had previously allowed Sutton and Banks to use his mother's car in exchange for drugs, he did not give Sutton or Banks permission to the use the vehicle on February 12, 2014. Levine testified that, had he known that Sutton and Banks intended to steal his car, he would not have allowed them to spend the night at his home.

{¶12} Cleveland Police Detective Phillmore Evans testified that he interviewed

Sutton at the Fourth District Precinct on February 12, 2014. Sutton told Evans that on February 7, 2014 she invited Dwayne Wilson to spend the night with her after Swanson was late to their arranged rendezvous and she no longer believed Swanson was coming to her home. However, Swanson did appear and when Wilson arrived shortly thereafter he found Swanson attempting to rape her at gunpoint. Sutton claimed that after the shooting occurred she left the home separately from Wilson.

{¶13} After the interview concluded and Sutton left the precinct, Kenneth Allen, a Cleveland police patrol officer spotted a white Chevy Impala with the license plate GBW 2832 in the driveway at 3464 West 73rd Street in Cleveland. Banks was arrested at the scene in possession of the car's keys. Banks told Allen that he had just come from the Fourth District Precinct where he had dropped off a female friend. While police remained on scene with Banks in the back of a squad car, Sutton appeared and asked to retrieve her cell phone from the Impala. Sutton was arrested and returned for a second interview with Evans where she admitted that Dwayne Wilson's real name was Earl Banks and that he was the individual involved in the shooting of Ryan Swanson. Sutton further admitted that she lied to Evans about Banks' whereabouts and the fact that he had dropped her off at the precinct earlier in the day.

{¶14} At the conclusion of trial, in CR-14-582703-A the jury found Sutton guilty of kidnapping, one count of aggravated robbery and two counts of felonious assault and not guilty of all firearm specifications. The jury found Sutton not guilty of the remaining charges. In CR-14-582808-B the jury found Sutton guilty of burglary and

grand theft.

{¶15} In CR-14-582703-A the trial court merged Sutton's kidnapping and aggravated robbery offenses as allied offenses and Sutton's two felonious assaults as allied offenses. The state elected to proceed to sentencing on the aggravated robbery charge and the felonious assault charge, which was in violation of R.C. 2903.11(A)(1). Sutton was sentenced to an 11-year prison term for aggravated robbery and a five-year prison term for felonious assault. The trial court ordered Sutton's sentences in CR-14-582703-A to be served consecutively for a cumulative prison sentence of 16 years.

{¶16} In CR-14-582808-B the trial court imposed an eight-year prison term for burglary and a six-month prison term for grand theft. The two terms were ordered to be served concurrently.

{¶17} In her first assignment of error, Sutton argues that her trial counsel was ineffective for failing to oppose the joinder of her indictments in CR-14-582703-A and CR-14-582808-B for purposes of trial. We find no merit to this argument.

{¶18} In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of defendant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶19} Sutton argues that the joinder of the two indictments for trial was inappropriate because the incidents were not relevant to each other and their joinder

raised the danger that the jury would convict her solely because it assumed that she had a propensity to commit criminal acts.

{¶20} Under Crim.R. 8(A), which governs the joinder of offenses, two or more offenses may be charged together if the offenses "are of the same or similar character, * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Similarly, Crim.R. 13 provides that a trial court may order two or more indictments or informations, or both, to be tried together, "if the offenses or the defendants could have been joined in a single indictment or information."

{¶21} The law favors joining multiple offenses in a single trial if the requirements of Crim.R. 8(A) are satisfied. *State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, ¶ 38. If it appears, however, that the defendant would be prejudiced by the joinder, a trial court may grant a severance. Crim.R. 14; *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 95. The defendant bears the burden of proving prejudice. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29.

{¶22} The state may rebut a defendant's claim of prejudicial joinder in two ways: (1) by showing that, if in separate trials, the state could introduce evidence of the joined offenses as "other acts" under Evid.R. 404(B), which is known as the "other acts" test; or (2) by showing that the evidence of each crime joined at trial is simple and direct, which is known as the "joinder test." *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293

(1990). "A trier of fact is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated." *State v. Lunder*, 8th Dist. Cuyahoga No. 101223, 2014-Ohio-5341, ¶ 33, citing *State v. Torres*, 66 Ohio St.2d 340, 343-344, 421 N.E.2d 1288 (1981). Joinder is therefore not prejudicial when the evidence is direct and uncomplicated and can reasonably be separated as to each offense. *Id.*

{¶23} If the state can meet the requirements of the "joinder test," it need not meet the requirements of the stricter "other acts" test. *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991). A defendant is therefore not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B). *Id.*

{¶24} This court reviews a trial court's decision on joinder for an abuse of discretion. *State v. Grimes*, 8th Dist. Cuyahoga No. 94827, 2011-Ohio-4406, ¶ 15, citing *State v. Segines*, 8th Dist. Cuyahoga No. 89915, 2008-Ohio-2041.

{¶25} In this instance, the incidents charged in the two indictments were connected temporally and factually as described above. Furthermore, the evidence presented by the state with regard to each offense was simple and direct. There is no indication in the record that the jury confused the evidence as to the different counts or that the jury was influenced by the cumulative effect of the joinder. In fact, the jury's not guilty verdicts on several of the charges demonstrated the jury's ability to apply the evidence separately to each offense. *State v. Peterson*, 8th Dist. Cuyahoga Nos. 100897 and 100899,

2015-Ohio-1013, ¶ 69. Joinder was, therefore, not prejudicial.

{¶26} Sutton's first assignment of error is overruled.

{¶27} In Sutton's second assignment of error she argues that the evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of kidnapping, aggravated robbery and felonious assault in CR-14-582703-A and burglary and grand theft in CR-14-582808-B.

{¶28} This court has said that, in evaluating a sufficiency of the evidence argument, courts are to assess not whether the state's evidence is to be believed but whether, if believed, the evidence against a defendant would support a conviction. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry then is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶29} Sutton's convictions were based on accomplice liability, which is governed by R.C. 2923.03, the pertinent parts of which state as follows:

> (A) No person, acting with the kind of culpability required for the commission of an offense, shall * * * (2) Aid or abet another in committing the offense * * *.
>
> * * *
>
> (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender.

**{¶30}** In CR-14-582703-A   Sutton was convicted of kidnapping in violation of R.C. 2905.01(A)(2), aggravated robbery in violation of R.C. 2911.01(A)(3) and two counts of felonious assault in violation of R.C. 2903.11(A)(1) and (2).   The kidnapping statute provides:

> (A)   No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> * * *
>
> (2)   To facilitate the commission of any felony or flight thereafter;   * * *

R.C. 2905.01(A)(2).

**{¶31}** Sutton argues that there was no evidence that Swanson's liberty was restrained in this case.   This court has previously defined the element of "restrain the liberty of the other person" to mean "to limit one's freedom of movement in any fashion for any period of time." *State v. Wright*, 8th Dist. Cuyahoga No. 92344, 2009-Ohio-5229, ¶ 23-24, quoting *State v. Wingfield*, 8th Dist. Cuyahoga No. 69229, 1996 Ohio App. LEXIS 867 (Mar. 7, 1996). *See also State v. Walker*, 9th Dist. Medina No. 2750-M, 1998 Ohio App. LEXIS 4067 (Sept. 2, 1998) (restraint of liberty does not require prolonged detainment); *State v. Messineo*, 5th Dist. Athens Nos. 1488 and 1493, 1993 Ohio App. LEXIS 38 (Jan. 6,1993) (grabbing victim's arm and shaking her constituted restraint).

R.C. 2901.01(A)(1) defines "force" as meaning any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.

**{¶32}** We find that the state offered sufficient evidence of Swanson's liberty being restrained. Swanson testified that he did not voluntarily move into the kitchen during the struggle with Banks and, while he was on the ground in the kitchen, he was not free to get up and leave because Banks was between himself and the exit. We reject Sutton's argument that the state offered insufficient evidence to support a kidnapping charge.

**{¶33}** With respect to Sutton's convictions for aggravated robbery and felonious assault, Sutton argues that she was not complicit in the actions of Banks because she did not intend for Swanson to get hurt.

> To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime."

*State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, syllabus.

**{¶34}** "Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." *Id*. at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist. 1971). "It is a fundamental principle that a person is presumed to intend the natural, reasonable and

probable consequences of his voluntary acts." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 143, quoting *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978). An accused need not foresee the precise consequences of his conduct. *State v. Spates*, 8th Dist. Cuyahoga No. 100933, 2015-Ohio-1014, ¶ 54, citing *State v. Smith*, 4th Dist. Ross No. 06CA2893, 2007-Ohio-1884, ¶ 29. "To be actionable it is only necessary that the result is within the natural and logical scope of risk created by the conduct." *Id.* This presumption is rebuttable and the matter is one ultimately for the trier of fact. *State v. Lacavera*, 8th Dist. Cuyahoga No. 96242, 2012-Ohio-800, ¶ 29, citing *State v. Wright*, 2d Dist. Montgomery No. CA 6394, 1980 Ohio App. LEXIS 9926 (Sept. 30, 1980).

**{¶35}** In this instance, the state introduced a combination of direct and circumstantial evidence to demonstrate that Sutton lured Swanson to her home for the alleged purpose of engaging in sex for hire but with the true purpose of robbing him by force. That Swanson might suffer serious physical harm as a result of this plan was entirely foreseeable. Sutton's argument that she was not complicit in the actions of Banks because she did not intend for Swanson to be harmed is without merit.

**{¶36}** In CR-14-582808 Sutton was convicted of burglary in violation of R.C. 2911.12(A)(1) and grand theft in violation of R.C. 2913.02(A)(1). In regard to the burglary charge, Sutton argues that the state failed to offer sufficient evidence that she committed a burglary by deception because Levine invited Sutton and Banks to stay the night in the home. We disagree. R.C. 2911.12(A)(1) defines burglary as follows:

(A)   No person, by force, stealth, or deception, shall do any of the following:

(1)   Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;   * * *.

R.C. 2911.12(A)(1).

**{¶37}** R.C. 2911.10 clarifies that the trespass element of burglary refers to a violation of R.C. 2911.21 which defines criminal trespass.   R.C. 2911.21 further explains that it is no defense to a trespass charge that the offender was authorized to enter or remain on the premises when such authorization was secured by deception. R.C. 2911.21(C).   Therefore, Sutton's argument fails because the state presented sufficient evidence that Levine may have been motivated to allow Sutton and Banks to spend the night in his home by a fabricated expression of interest in renting the property when in truth they intended to steal his car keys.

**{¶38}**   We next examine Sutton's argument that the state failed to present sufficient evidence to support her conviction for grand theft of a motor vehicle.   The elements of grand theft of a motor vehicle are stated in R.C. 2913.02(A)(1) as follows:

(A)   No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1)   Without the consent of the owner or person authorized to give consent.

R.C. 2913.02(A)(1).

**{¶39}** Sutton argues that the state failed to present sufficient evidence that she and Banks exerted control over Levine's car without his consent. This argument is without merit because Levine testified that Sutton and Banks did not have permission to use the vehicle at the time of the offense on February 12, 2014.

**{¶40}** Sutton's second assignment of error overruled.

**{¶41}** In Sutton's third assignment of error she argues that her convictions for kidnapping, aggravated robbery and felonious assault in CR-14-582703-A and burglary and grand theft in CR-14-582808-B were against the manifest weight of the evidence.

**{¶42}** A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence.

**{¶43}** "When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a 'thirteenth juror' and may disagree 'with the factfinder's resolution of conflicting testimony.'" *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable

inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. Reversal on manifest weight grounds is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin*, *supra*.

{¶44} As to CR-14-582703-A, Sutton argues that the jury lost it way in believing the testimony of Swanson over her own version of the events the night of February 7, 2014, which were presented to the jury by the way of recorded statements provided to police by Sutton and Banks. Sutton correctly points out that Swanson is not the most credible witness. Swanson admitted to lying to police about the cause and situs of his injuries to avoid implicating himself in a prostitution scheme. Furthermore, Swanson's account of the altercation between himself and Banks contains what appear to be embellishments. First, Swanson claimed that Banks broke through the bedroom door when he confronted Swanson, damaging the doorjamb in the process. There was no physical evidence to support this allegation.

{¶45} Furthermore, Swanson claimed that Banks first shot him from a distance of

ten feet and then, when Swanson struggled to his feet, Banks shot him a second time. Swanson had gunshot wounds to his thigh on opposite sides and physical evidence and testimony from the treating physician established that a single bullet had traveled through and through Swanson's thigh and no bullets remained in his leg. Additionally, police recovered a single shell casing from the kitchen.

{¶46} Despite an imperfect accounting of the incident from the victim, Sutton's version of events can hardly be given greater credibility. Sutton admitted to arranging for Swanson to come to her home for sexual conduct for hire but claimed that as time passed she no longer believed he would arrive and then invited Banks to spend the night with her. She claimed that Banks had no knowledge of her prostitution activities but was not troubled by the fact that when Swanson arrived to engage her services, Banks was also on his way to visit her. Sutton did not call Banks to forestall his arrival despite the appearance of Swanson. Sutton was unable to explain to police how the apparently blissfully ignorant Banks could have believed that she gave "massages" at 3 a.m. in the morning. Furthermore, it is uncontroverted that Sutton lied to police during her initial interview about her connection to Banks and knowledge of his whereabouts.

{¶47} On these facts we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice when it chose to believe Swanson over Sutton.

{¶48} In CR-14-582808-B, Sutton again argues that the victim, Mr. Levine, lacked credibility because he admitted to marijuana and crack cocaine use. Sutton argues that Levine lied at trial and that he had given Sutton and Banks permission to use his car in

exchange for drugs and only reported the car stolen when they were slow to return it. Levine's credibility was a matter for the jury to assess and we are not persuaded by Sutton's arguments.

{¶49} However, this writer would find Sutton's conviction for burglary to be against the manifest weight of the evidence. Weighing all the evidence and reasonable inferences, considering the credibility of the witnesses involved in the burglary offense and conflicts in the evidence, this writer believes that the jury lost its way in finding Sutton guilty of burglary. The state's theory on the burglary charge is that Sutton and Banks gained access to Levine's home the morning of February 12, 2014, by way of a deception relating to their interest in renting the property when, in truth, their purpose was to steal Levine's car keys. This writer believes that the evidence supports this conclusion. In my opinion, the evidence reveals the theft of the car to be a crime of opportunity rather than a burglary.

{¶50} Although he attempted to downplay his drug usage, Levine eventually admitted that Sutton provided him with crack cocaine during the day of February 11, 2014 and that he smoked crack and marijuana that day along with Sutton and Banks. Levine went upstairs to sleep at 1:30 a.m. on February 12th and as to Sutton and Banks spending the night, testified as follows:

Question: You let them stay at your house to test the place out?

Answer: They needed a place to stay. They weren't sleeping anywhere but on the street, from what I was told.

{¶51} Although there may have been some discussion of renting the property, in

my opinion, the manifest weight of the evidence suggests that Sutton and Banks were at Levine's home into the early morning hours of February 12, 2014, for the purpose of smoking crack and marijuana with him and, when Levine retired for the night, he allowed them to stay because they had nowhere else to go. Thus, in my opinion, the theft of Levine's car was not the product of deception but rather an independent crime of convenience while they were lawfully in his home.

{¶52} In short, the writer believes that Sutton and Banks did not gain permission to enter or remain in Levine's home the morning of February 12th by deception and, therefore, did not commit a trespass of the property. Although the state introduced some scintilla of evidence to survive a sufficiency challenge on this issue, I would find Sutton's conviction for burglary to be against the manifest weight of the evidence.

{¶53} However, because there is not unanimity on this issue, the burglary conviction is affirmed. Reversing a conviction on the manifest weight of the evidence requires the unanimous concurrence of all three appellate judges. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, at paragraph four of the syllabus, citing Section 3(B)(3), Article IV of the Ohio Constitution (noting that the power of the court of appeals is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses).

{¶54} Sutton's third assignment of error is overruled.

{¶55} In Sutton's fourth assignment of error she claims that the trial court erred when it failed to merge as allied offenses of similar import Counts 3 and 5 in

CR-14-582703-A  and Counts 1 and 2 in CR-14-582808-B.

{¶56} R.C. 2941.25(A) allows only a single conviction for conduct that constitutes "allied offenses of similar import." But under R.C. 2941.25(B), a defendant charged with multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 13, citing *State v. Moss*, 69 Ohio St.2d 515, 519, 433 N.E.2d 181 (1982).

{¶57} In *Ruff* the Ohio Supreme Court recently clarified the test a trial court and a reviewing court must employ in determining whether offenses are allied offenses that merge into a single conviction, stating:

When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. 2941.25(B).

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is

true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses (1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm; (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Id.* at ¶ 24-26.

**{¶58}** In CR-14-582703-A Sutton argues that her aggravated robbery and felonious assault convictions should have been merged as allied offenses. Although Sutton requested the merger of all offenses in CR-14-582703-A, the trial court merged only the aggravated robbery with the kidnapping and the two felonious assaults with each other.

**{¶59}** Sutton was convicted of aggravated robbery in violation of R.C. 2911.01(A)(3) which provides:

(A)   No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the

attempt or offense, shall do any of the following:

(3)   Inflict, or attempt to inflict, serious physical harm on another.

**{¶60}** In this case, the felonious assault and the aggravated robbery were committed with the same conduct.   The facts reveal that Swanson was shot once in the leg during the struggle with Banks. Both the aggravated robbery and merged felonious charge required the state to establish the element of serious physical harm.   The serious physical harm element in both counts references the same gun-related injuries suffered by Swanson.   Therefore, we cannot say that the two offenses were committed with separate conduct or resulted in separate, identifiable harms such that the offenses were of dissimilar import.

**{¶61}** The sole remaining question is whether the offenses were committed with a separate animus. This court in *State v. Bailey*, 8th Dist. Cuyahoga No. 100993, 2014-Ohio-4684, stated:

> However, the issue of whether two offenses are allied depends not only on whether the two crimes were committed in the same act, but also with a single state of mind. The Ohio Supreme Court has defined the term "animus" to mean "purpose or, more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). Because animus is often difficult to prove directly, it may be inferred from the surrounding circumstances. When "an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he

must, a priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime." *Id.*

Thus, when determining whether two offenses were committed with a separate animus, the court must consider (1) whether the first offense was merely incidental to the second offense or whether the defendant's conduct in the first offense demonstrated a significance independent of the second, and (2) whether the defendant's conduct in the first offense subjected the victim to a substantial increase in the risk of harm apart from that involved in the second offense. *State v. Shields*, 1st Dist. Hamilton No. C-100362, 2011-Ohio-1912, ¶ 17.

*Id.* at ¶ 34 and 35.

{¶62} In this instance, we cannot say that the trial court erred in refusing to merge the offenses because the record contains evidence that establishes the crimes were committed with separate animus. This court has previously held that where a defendant uses greater force than necessary to complete aggravated robbery, he shows a separate animus. *Bailey*, ¶ 37. Swanson testified that during the course of his struggle with Banks, Banks obtained control of the gun and, from a standing position at a distance of ten feet, Banks shot Swanson, who remained on the ground. Banks, in control of the gun and standing ten feet from Swanson, naked and on the ground, possessed a separate animus when he shot Swanson as opposed to his animus in committing the aggravated robbery. The shooting was not necessary to complete the robbery at that point. *Id.* at ¶ 38. Therefore, the felonious assault was not merely incidental to the aggravated robbery and the convictions do not merge.

{¶63} In CR-14-582808-B Sutton argues that her burglary and grand theft convictions should have been merged as allied offenses. We disagree because the record

reflects that the offenses were committed with separate conduct.

**{¶64}** Sutton's burglary was accomplished when she and Banks used deception to obtain Levine's consent to remain in the home throughout the night with the intention to commit a theft offense. *State v. Richardson*, 8th Dist. Cuyahoga No. 100115, 2014-Ohio-2055, ¶ 32; *State v. Smith*, 8th Dist. Cuyahoga No. 95243, 2011-Ohio-3051, ¶ 80. Only at some later, unknown point during the night, after the trespass by deception had been accomplished and Levine had retired for the night did Sutton and Banks steal the keys to Levine's car. Therefore, the two offenses were committed with separate conduct and do not merge as allied offenses of similar import. *Id.*; *State v. Smith*, 8th Dist. Cuyahoga No. 100641, 2014-Ohio-3420, ¶ 47.

**{¶65}** Sutton's fourth assignment of error is overruled.

**{¶66}** Sutton argues in her fifth assignment of error that the trial court erred by imposing the maximum consecutive sentence and failing to make the required findings under R.C. 2929.11 and 2929.12.

**{¶67}** We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). Under R.C. 2953.08(G)(2), an appellate court may increase, reduce or modify a challenged felony sentence or may vacate the sentence and remand the matter to the sentencing court for resentencing if it "clearly and convincingly finds" that the sentence is "contrary to law." R.C. 2953.08(G)(2).

**{¶68}** A sentence is contrary to law if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors

set forth in R.C. 2929.12. *State v. Carrington*, 8th Dist. Cuyahoga No. 100918, 2014-Ohio-4575, ¶ 22, citing *State v. Hodges*, 8th Dist. Cuyahoga No. 99511, 2013-Ohio-5025, ¶ 7.

**{¶69}** Sutton argues that the trial court failed to consider the purposes and principles of sentencing under R.C. 2929.11 or the seriousness and recidivism factors listed in R.C. 2929.12 when it imposed the maximum sentence for the aggravated robbery and burglary offenses and ordered the aggravated robbery sentence to be served consecutively to Sutton's sentence for felonious assault. Sutton further argues that the trial court erred in failing to give a specific analysis as to its consideration of the factors in R.C. 2929.12.

**{¶70}** R.C. 2929.11 provides that a sentence imposed for a felony shall be reasonably calculated to achieve two "overriding purposes" of felony sentencing: (1) "to protect the public from future crime by the offender and others" and (2) "to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A), (B). R.C. 2929.11(A) states that "[t]o achieve these purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(B) further requires that the sentence imposed be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim" and "consistent

with sentences imposed for similar crimes committed by similar offenders."

{¶71} R.C. 2929.12 grants discretion to the trial court to determine the most effective way to comply with the purposes and principles set forth in R.C. 2929.11 when imposing a sentence. However, in exercising this discretion, the court must consider a non-exhaustive list of factors relating to the seriousness of the offender's conduct and the likelihood of recidivism and may, in addition, consider any other factors relevant to achieving these purposes and principles of sentencing.

{¶72} Although there is a mandatory duty to "consider" the relevant statutory factors under R.C. 2929.11 and 2929.12, the sentencing court is not required to engage in any factual findings under R.C. 2929.11 or 2929.12. *State v. Bement*, 8th Dist. Cuyahoga No. 99914, 2013-Ohio-5437, ¶ 17; *State v. Combs*, 8th Dist. Cuyahoga No. 99852, 2014-Ohio-497, ¶ 52. While trial courts must carefully consider the statutes that apply to every felony case, it is not necessary for the trial court to articulate its consideration of each individual factor as long as it is evident from the record that the principles of sentencing were considered. *State v. Roberts*, 8th Dist. Cuyahoga No. 89236, 2008-Ohio-1942, ¶ 10. This court has found that a trial court's statement in its sentencing journal entry that it considered the required statutory factors, without more, is sufficient to fulfill a trial court's obligations under R.C. 2929.11 and 2929.12. *State v. Clayton*, 8th Dist. Cuyahoga No. 99700, 2014-Ohio-112, ¶ 9.

{¶73} Sutton's argument that the trial court failed to consider the relevant statutory factors under R.C. 2929.11 and 2929.12 is without merit. Aside from the trial court's

notation in the sentencing entry that it "considered all required factors of law" including, specifically, R.C. 2929.11, the record in this case reflects that the trial court did, in fact, consider both R.C. 2929.11 and 2929.12 when sentencing Sutton. Both Sutton and her counsel had an opportunity to address the trial court prior to sentencing and make arguments in mitigation. The trial court obtained a presentence investigation report for Sutton and noted Sutton's drug abuse and significant criminal history. Sutton's argument that the trial court failed to consider R.C. 2929.11 and 2929.12 is without merit.

{¶74} Aside from her assertion that the trial court failed to consider R.C. 2929.11 and 2929.12, Sutton presents no argument regarding the trial court's imposition of consecutive sentences in light of the above facts. Regarding the imposition of the maximum sentence for aggravated robbery, there is no statutory requirement for findings in order to impose such a sentence, and a trial court has the discretion to impose a prison sentence within the statutory range. "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum * * * sentences." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. Because the trial court sentenced Sutton within the statutory range, there was no error with the imposition of a maximum sentence.

{¶75} Sutton's fifth assignment of error is overruled.

{¶76} Sua sponte, we note the trial court failed to incorporate its consecutive sentences findings in the sentencing journal entries as required under *State v. Bonnell*,

140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. A trial court's failure to incorporate statutory findings made under R.C. 2929.14(C)(4) in the sentencing journal entry after properly making those findings at the sentencing hearing is a "clerical mistake" that may be corrected by the court through a nunc pro tunc entry "to reflect what actually occurred in open court." *Id*. at ¶ 29. It "does not render the sentence contrary to law." *Id*. We further note that as to CR-14-582703-A the trial court's January 12, 2015 journal entry titled, "sentencing entry dated 11-20-2014 is corrected" is incomplete as to Count 1 of the indictment and must be corrected.

**{¶77}** The judgment of the trial court is affirmed and case remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and

SEAN C. GALLAGHER, J., CONCUR