[Cite as *State v. Sharp*, 2022-Ohio-2274.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 110944 |
| v. | : | |
| TROY SHARP, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 30, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-658554-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jonathan Block, Assistant Prosecuting Attorney, *for appellee.*

Mary Catherine Corrigan, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant Troy Sharp ("Sharp") appeals the trial court's imposition of the maximum sentence after Sharp pled guilty to felonious assault. For the reasons that follow, we affirm.

{¶ 2} On April 22, 2021, Sharp was charged with attempted murder (Count 1), two counts of felonious assault (Counts 2 and 3), and tampering with evidence (Count 4). Counts 1, 2, and 3 contained both a one- and three-year firearm specification. All counts included a forfeiture specification.

{¶ 3} On August 19, 2021, Sharp entered into a plea agreement with the state in which he pled guilty to an amended Count 2 — felonious assault with the 3-year firearm specification and forfeiture of his Glock 19, 9 mm handgun. Sharp agreed to no contact with the victim, restitution in an amount to be determined at sentencing, and a mandatory prison sentence, to which the victim consented. The remaining counts and specifications were dismissed. The trial court advised Sharp that he faced a mandatory 3 years for the firearm specification, to be served consecutively and prior to a minimum period of incarceration of 2-8 years on the underlying felonious assault; the felonious assault charge was subject to indefinite sentencing under the Reagan Tokes Law; and he faced a mandatory 3-year term of postrelease control. The trial court accepted Sharp's guilty plea and ordered a presentence-investigation report.

{¶ 4} The matter proceeded to sentencing on September 29, 2021. Counsel for Sharp, Sharp, the assistant prosecutor, and the victim all addressed the court. Counsel for Sharp related that Sharp had been residing at the victim's house and storing marijuana cultivation equipment and growing marijuana in the victim's garage. Counsel added that Sharp was not a major drug user but had developed a passion for cultivating marijuana and graduated from the Cleveland School of

Cannabis. Counsel stated that after Sharp was no longer permitted to reside or grow marijuana at the victim's house, he went back to get his money and marijuana cultivation equipment. While he was at the victim's house, an argument ensued between Sharp and the victim, during which Sharp pulled out a gun and shot the victim.

{¶ 5} Counsel stated that Sharp believed the anger and impulsiveness he experienced that day were attributable to medication he had been taking for mental health issues. Counsel noted that Sharp is 47 years old, has no criminal history, and had never acted this way in the past. Counsel stated that Sharp is a practicing Christian and felt remorse for his actions. Counsel pointed to a sentencing memo she filed for the purpose of mitigation, to which she attached a letter from Sharp, Sharp's degrees in electrical engineering and from the Cleveland School of Cannabis, as well as six letters from family and friends who have known Sharp many years. Counsel also pointed to the moderate- and low-risk factors contained in the presentence-investigation report.

{¶ 6} Sharp then addressed the court. Sharp apologized and said he was not acting like himself on the day of the incident. He explained that he was prescribed Zoloft for anxiety, and its label merely warned that it might cause drowsiness and not to operate heavy machinery. He said he did not realize that the medication would cause a "psychotic episode," adding that the medication also caused him to have violent thoughts following his arrest and that he even contemplated hurting a female corrections officer during his intake. He said that,

following his arrest, he called his ex-wife, who reminded him that he used to take a medication in the Zoloft family that had caused a similarly bad reaction years ago, and if he had made this connection himself, he would not have taken Zoloft.  He stated that he was "a hundred percent positive" the shooting resulted from the medication.  Sharp also added that he was "shooting in retreat" and discharged the firearm "to keep from getting overthrown by [the victim]."  He stated that he is not a violent person, goes to church three times per week, and does not have a violent criminal history.

{¶ 7}  The assistant prosecutor next addressed the court, calling attention to several photographs depicting the scene of the shooting, which took place in front of the victim's garage.  The assistant prosecutor stated that Sharp already had the gun drawn as he approached the victim and asked him where his money was.  The assistant prosecutor noted that the crime scene photos showed several bullet holes in the back of the garage, ricochets where bullets had been fired alongside the victim, and two bullet wounds from the shots that Sharp had fired at the victim.  One photo showed a bullet wound in the victim's left thigh, which neighbors "were attempting to tourniquet" to prevent blood loss.  Another photo showed a bullet wound in the victim's right leg, just above his knee.

{¶ 8}  The assistant prosecutor also called attention to Sharp's own statements at the sentencing hearing, observing that Sharp appeared to be blaming the victim by alleging self-defense, which sounded neither "contrite" nor like Sharp took responsibility for the shooting.  The assistant prosecutor pointed out that Sharp

had admitted that his medication warned him not to operate heavy machinery, yet he drove to the victim's home with a loaded handgun and an expired concealed-carry permit and should have been on notice from his former gun safety training that he should not be using a firearm if he suffered from issues with his mental health and medication. The assistant prosecutor also noted that Sharp self-reported an incident of domestic violence, which demonstrated, by Sharp's own admission, that the shooting was not the first violent incident in which he had been involved.

{¶ 9} The victim then addressed the court. The victim stated that the responding officer informed him that, before traveling to the victim's house, Sharp told his girlfriend that he planned to hurt the victim. The victim stated that as a result of the shooting, he now has steel plates in his legs, he had to do physical therapy, and one of the gunshot wounds "ruined [his] leg." The victim stated that his family owns a successful construction business, he has worked in construction his entire life, and his injuries keep him from doing this work. The assistant prosecutor added that one of the bullets shattered the victim's shin bone, after which plates were inserted to aid healing, physical therapy was required for the victim to learn to walk again, and the victim now walks with a noticeable limp.

{¶ 10} Sharp responded that he had not driven to the victim's house; rather, he was driven there by a woman he knew. Sharp stated that he had no intention of harming the victim and was surprised to learn that this woman had reported his intention to the police. Sharp added that his "original plan was to shoot out [the victim's] window to cost him the money" that Sharp believed the victim owed him.

**{¶ 11}** The trial court stated that after considering "all the principles and purposes of felony sentencing" and "all the appropriate recidivism and seriousness factors," it found "several things that are disturbing in this matter." The trial court found that Sharp went to the victim's home with a gun either to threaten him to return money or cause property damage to solve what amounted to a civil matter. The trial court found that Sharp's decision to bring a gun to get his money back demonstrated intent and destroyed any theory of self-defense. The trial court also found that Sharp failed to explain why he shot the victim and therefore "ha[d] no way to prevent it from happening again," which made him "an extreme danger." The trial court found no evidence that Sharp suffered a psychotic episode and if Zoloft made him angry, he should have stopped taking it or consulted with a doctor. The court found that the shooting was unprovoked and resulted in permanent injuries to the victim, which now affect his mobility, his ability to work, and his daily activities. The trial court found that, except for Sharp's self-reported incident of domestic violence, the state recognized his lack of a criminal record by permitting him to plea to felonious assault, a second-degree felony carrying a prison term of up to 8 years, instead of attempted murder, a first-degree felony carrying prison term of up to 11 years.

**{¶ 12}** The trial court then sentenced Sharp to a prison term of 3 years on the firearm specification, to be served consecutively and prior to an indefinite term of 8-12 years on the underlying felonious assault under the Reagan Tokes Law. The trial court imposed a mandatory 3-year term of postrelease control and credited

Sharp with 181 days of jail time. The trial court did not order restitution because the victim's insurer had paid his medical bills. In its sentencing entry, the trial court stated that it had "considered all required factors of the law" and found "prison * * * consistent with the purpose of R.C. 2929.11."

{¶ 13} Sharp now appeals, raising the following three assignments of error for review:

> Assignment of Error I: The trial court's sentence was contrary to law.
>
> Assignment of Error II: The appellant received ineffective assistance of counsel.
>
> Assignment of Error III: The trial court erred by imposing an unconstitutional sentence pursuant to the Reagan Tokes Act.

{¶ 14} In his first assignment of error, Sharp contends that his sentence of "11-15 years" was contrary to law. Sharp argues that if the trial court had properly considered the purposes, principles, and factors of felony sentencing under R.C. 2929.11 and 2929.12, it would not have imposed the maximum sentence for felonious assault. Sharp maintains that the trial court cannot meet the requirements of R.C. 2929.11 by rote recitation in its sentencing entry that it considered the purposes and principles of felony sentencing and that the trial court failed to state in its sentencing entry that it had considered the R.C. 2929.12 sentencing factors. Sharp also maintains that he met several mitigation factors under R.C. 2929.12, such as the shooting started as a disagreement between Sharp and the victim over the rental property; Sharp had a negative reaction to his anxiety medication that caused him to believe he was acting in self-defense; he did not have a serious criminal

history; and he showed remorse during sentencing. R.C. 2929.12(C)(1)-(2), (C)(4), (E)(3), (E)(5).

{¶ 15} The state argues that the trial court expressly stated on the record at sentencing and in its sentencing entry that it had considered the purposes, principles, and factors of felony sentencing under R.C. 2929.11 and 2929.12, and the record shows that the trial court reviewed and rejected the R.C. 2929.12 factors that Sharp raised to mitigate his sentence.

{¶ 16} Appeal of a felony sentence is governed by R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 22. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds that either the record does not support the sentencing court's findings as required by relevant sentencing statutes, or the sentence is otherwise contrary to law. *Id.* at ¶ 22-23.

{¶ 17} When sentencing a defendant, the sentencing court must consider the purposes and principles of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. *State v. Hodges*, 8th Dist. Cuyahoga No. 99511, 2013-Ohio-5025, ¶ 7. A sentence is contrary to law if it falls outside the statutory range for the offense or if the sentencing court fails to consider the purposes and principles of sentencing under R.C. 2929.11 and the sentencing factors under R.C. 2929.12. *State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58.

{¶ 18} Under R.C. 2929.11(A), a felony sentence shall be "reasonably calculated" to achieve three "overriding purposes": (1) "protect the public from future crime by the offender and others"; (2) "punish the offender"; and (3) "promote the effective rehabilitation of the offender using the minimum sanctions the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." Additionally, the sentence must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 19} R.C. 2929.12 gives the sentencing court discretion to determine the best way to comply with the purposes and principles of sentencing under R.C. 2929.11 when imposing a sentence. *State v. Bridges*, 8th Dist. Cuyahoga No. 107281, 2019-Ohio-1769, ¶ 10, citing *State v. Switzer*, 8th Dist. Cuyahoga No. 102175, 2015-Ohio-2954, ¶ 10. R.C. 2929.12 provides a nonexhaustive list of factors that a trial court must consider when determining the seriousness of the offender's conduct and the likelihood of recidivism, such as whether the victim suffered serious physical harm as a result of the offense, the offender's criminal history, whether the offender has demonstrated remorse, and any other factors relevant to achieving the purposes and principles of sentencing. R.C. 2929.12(A), (B)(2), (D)(2), and (D)(5).

{¶ 20} Although the sentencing court must consider the R.C. 2929.11 purposes and principles of sentencing and the R.C. 2929.12 sentencing factors, the court is not required to make specific findings on the record that it considered the

factors, even when imposing more than the minimum sentence. *Bridges* at ¶ 11, citing *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, and *State v. Rouse*, 8th Dist. Cuyahoga No. 107379, 2019-Ohio-708. The court's consideration of the factors is presumed unless the defendant affirmatively shows otherwise. *State v. Wright*, 2018-Ohio-965, 108 N.E.3d 1109, ¶ 16 (8th Dist.). The "court's statement in its sentencing journal entry that it considered the required statutory factors is alone sufficient to fulfill its obligations under R.C. 2929.11 and 2929.12." *Id.*

{¶ 21} Sharp pled guilty to felonious assault, a second-degree felony, with a 3-year firearm specification and forfeiture of the Glock 19, 9 mm handgun he used to shoot the victim. R.C. 2929.14(A)(2)(a) authorizes the court to impose a minimum prison term of 2, 3, 4, 5, 6, 7, or 8 years for a second-degree felony and a maximum term as defined by R.C. 2929.144. Felonious assault is a "qualifying felony" under the Reagan Tokes Law. R.C. 2929.144(A). R.C. 2929.144(B)(1) defines the maximum term as "equal to the minimum term imposed * * * plus fifty per cent of that term." R.C. 2929.14(C)(1)(a) provides that any prison term imposed for using a firearm to commit the underlying offense must be served consecutively and prior to the prison term for the underlying offense.

{¶ 22} The trial court imposed a 3-year term for Sharp's use of a gun to commit the felonious assault, to be served consecutively and prior to a minimum term of 8 years and a maximum term of 12 years for the felonious assault. The negotiated plea agreement between the parties was conditioned on Sharp's

accepting a mandatory prison sentence. Under the statute, the prison term for the firearm specification must be served consecutively and prior to the term for the underlying felonious assault. The court had no discretion when imposing this 3-year term. Also, the maximum term of Sharp's sentence for the underlying felonious assault is determined by the Reagan Tokes Law. The trial court had no discretion when imposing the indefinite sentence. The only discretion the trial court had was in determining a minimum sentence for the underlying felonious assault. Sharp contests his sentence, but the trial court's imposition of a term of 8 years falls within the statutory range provided under R.C. 2929.14(A)(2)(a).

{¶ 23} Sharp also contests whether the trial court considered the purposes, principles, and factors of felony sentencing under R.C. 2929.11 and 2929.12 before imposing the sentence. The trial court was not required, however, to make specific findings on the record that it had considered the statutory factors. *See Bridges* at ¶ 11. Nevertheless, at the sentencing hearing, the trial court stated that it "considered * * * all the principles and purposes of felony sentencing [and] all the appropriate recidivism and seriousness factors," and in its sentencing entry, the trial court stated that it "considered all required factors of the law" and "finds that prison is consistent with the purpose of R.C. 2929.11." *See Wright* at ¶ 16. These statements, standing alone, are sufficient to meet the trial court's obligations under R.C. 2929.11 and 2929.12.

{¶ 24} The record also reveals that the trial court considered the R.C. 2929.12 factors when determining Sharp's sentence. At sentencing, Sharp

maintained that he does not have a criminal history, is not a violent person, and Zoloft caused him to become violent. R.C. 2929.12(C)(4), (E)(2), and (E)(3). However, Sharp self-reported a history of domestic violence, R.C. 2929.12(E)(3), and the record contains no evidence that Sharp was suffering from a psychotic episode when he shot the victim. R.C. 2929.12(C)(4). The record also shows that Sharp shot at the victim six times, striking him once in the thigh of his right leg and just above the kneecap of his left leg, permanently disabling him. R.C. 2929.12(B)(2) and (C)(3). After the shooting, Sharp left the victim lying on the ground bleeding, and a neighbor who heard the shots rushed to Sharp's aid and applied a tourniquet to stop the bleeding as they awaited the arrival of EMS. R.C. 2929.12(B)(2).

{¶ 25} Sharp also maintained that he acted in self-defense, R.C. 2929.12(C)(1) and (4), yet by his own admission, Sharp believed the victim owed him money and brought a gun to the victim's home, intending either to threaten him personally to return the money or cause damage to the victim's property in the same amount. R.C. 2929.12(C)(1), (3), and (4). The victim said he learned from a responding officer that Sharp told his girlfriend that he intended to "hurt" the victim. R.C. 2929.12(C)(3). The trial court found Sharp's failure to explain why he shot the victim presented "no way to prevent it from happening again," which made him "an extreme danger." R.C. 2929.12(E)(4). The trial court considered the unprovoked attack a serious safety concern for the community despite Sharp's lack of an extensive or serious criminal history. R.C. 2929.12(C)(2), (E)(2), and (E)(3). The court also noted that the state took Sharp's criminal history

into account when it permitted him to plea to felonious assault instead of attempted murder. R.C. 2929.12(E)(2) and (3).

{¶ 26} Sharp maintains that he showed remorse at his sentencing. R.C. 2929.12(E)(5). However, Sharp's preceding two arguments that he became violent due to a bad reaction to Zoloft and that he shot the victim in self-defense demonstrate that he did not accept responsibility for the shooting. R.C. 2929.12(D)(5). Nor did the court find Sharp to be particularly contrite given the permanent injuries he caused to the victim. R.C. 2929.12(D)(5). The record therefore shows that the trial court weighed the relevant seriousness and recidivism factors against the mitigation factors that Sharp raised at his sentencing and found the sentence consistent with the purposes, principles, and factors of felony sentencing under R.C. 2929.11 and 2929.12.

{¶ 27} Because Sharp's sentence is within the statutory range and the trial court considered the statutory factors when imposing this sentence, we cannot say on this record that Sharp's sentence is clearly and convincingly contrary to law.

{¶ 28} Accordingly, we overrule Sharp's first assignment of error.

{¶ 29} We address Sharp's second and third assignments of error out of order because our resolution of the third assignment of error renders the second assignment of error moot. In his third assignment of error, Sharp argues that his sentence under the Reagan Tokes Law violates (1) the constitutional right to a trial by jury, (2) the separation-of-powers doctrine, and (3) due process. Our en banc decision in *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.), overruled

the same challenges to the Reagan Tokes Law that Sharp raises in this appeal. *State v. Dix*, 8th Dist. Cuyahoga No. 110079, 2022-Ohio-681, ¶ 19. In the second assignment of error, Sharp argues that he received ineffective assistance of counsel due to trial counsel's failure to object to the constitutionality of the Reagan Tokes Law. Our disposition of the third assignment of error, however, renders the second assignment of error moot. App.R. 12(A)(1)(c).

{¶ 30} Therefore, Sharp's second and third assignments of error are overruled.

{¶ 31} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN A. GALLAGHER, J., CONCUR