[Cite as *State v. Tinsley*, **2024-Ohio-2450**.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 113474 |
| v. | : | |
| CHARLENE TINSLEY, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 27, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-681229-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Adrienne E. Linnick, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellant.*

MARY J. BOYLE, J.:

**{¶ 1}** In this appeal, defendant-appellant, Charlene Tinsley, ("Tinsley"), challenges her 12-month prison sentence after pleading guilty to gross sexual imposition ("GSI"), a fourth-degree felony, in violation of R.C. 2907.05(A)(1),

involving a baby. Tinsley claims she should have received community-control sanctions, rather than incarceration. For the reasons set forth below, we affirm.

## I. Facts and Procedural History

**{¶ 2}** Tinsley was the daycare provider for K.B. (d.o.b. 02/18/2019). Tinsley, with her pastor, self-reported to K.B.'s parents in early 2023, that on one occasion when eighteen-month-old K.B. was sleeping on her lap, she gyrated him between her legs for her own sexual gratification. As a result, K.B.'s parents filed a police report with the Euclid Police Department ("Police"), which investigated this matter. Tinsley gave a voluntary confession to the Police, confirming her described conduct with K.B.

**{¶ 3}** In June 2023, Tinsley was charged with one count of GSI, in violation of R.C. 2907.05(A)(4), a third-degree felony. The indictment alleges that the offense occurred sometime between February 18, 2022, and May 31, 2022.

**{¶ 4}** Pursuant to a plea agreement in October 2023, Tinsley pled guilty to an amended count of GSI from a third-degree felony to a fourth-degree felony in violation of R.C. 2907.05(A)(1).

**{¶ 5}** At the sentencing hearing in November 2023, counsel for the parties, K.B.'s mother, and Tinsley, each addressed the court. First, the baby's mother explained to the court that Tinsley watched K.B. from the ages of eighteen months until three years old at Tinsley's house. She told the court that K.B. had been showing behaviors that were concerning and so they took K.B. to a behavior specialist. She expressed that this is the "worst nightmare as mother," that Tinsley

never apologized and has shown no remorse. She told the court that K.B., who was four years old at the time of sentencing, was still acting out and was being evaluated for behavior problems and ADHD. She voiced her fears that the harm Tinsley has caused her son will stay with him throughout his lifetime and questioned Tinsley's admission to only sexually abusing her baby one time. K.B.'s mother requested that the court incarcerate Tinsley to the maximum sentence.

{¶ 6} Next, the assistant prosecutor provided the court with more information surrounding this crime. She told the court that for the last twenty years, Tinsley had been watching children from the victim's family and that while most days she watched K.B. with other children around including his cousins, on Mondays, Tinsley was alone with K.B., only caregiving for him. The troubling behavior exhibited by K.B. included "pulling on his private parts so hard that it would bleed [taking] off his diaper and hump[ing] pillows." (Tr. 15.) Furthermore, around the time that K.B. was more verbal, Tinsley told his parents that she wanted to quit watching him. The State requested the court to sentence Tinsley to prison, pointing out that as a felony-four sex offense, this crime is "one of the more extreme, one of the more serious of this level of offense," and that the relationship Tinsley had with K.B. and the trust which the parents placed in her facilitated the offense.

{¶ 7} Defense counsel then addressed the court emphasizing that the crime which Tinsley is being sentenced upon was a "single assault" not plural, the crime occurred over two years ago when K.B. was eighteen months old, Tinsley "never touched the child's genitals, his penis, she never sexually gratified this child. This

was for her own sexual gratification, not the child's," and there are no other allegations over the twenty years she was a caregiver. (Tr. 17.) Defense counsel reminded the court that the only evidence of this crime occurring comes from Tinsley herself. Tinsley, confessed because "[s]he felt guilty about it." (Tr. 18.) Defense counsel requested the court to sentence her to community-control sanctions, highlighting that she is 60 years old with no prior criminal record, has an IQ of 78 and a history of depression, was child victim of abuse herself, and the presentence-investigation report ("PSI") shows that Tinsley is a low risk of recommitting this offense falling into group F sex offender status.

{¶ 8} Next, Tinsley spoke to the court. Tinsley told the court that she was sorry "for that even happening, and it only happened once. It didn't happen over and over and none of that. I turned myself over to God and I have to come in front of him and say it." (Tr. 20.)

{¶ 9} Before announcing its sentence, the court began by explaining that it looked at the sentencing factors and acknowledged that it is required to comply with the purposes and principles outlined in R.C. 2929.11(A). It went onto to say that

> the overriding purpose is to punish the offender and protect the public from future crime by the offender and others using what the Revised Code describes as the minimum sanctions — highlighting minimum sanctions — that the court determines accomplishes this purpose without imposing an unnecessary burden on State and Local resources.

> The court is always to consider the need for incapacitation, deterrence, rehabilitation and restitution and the sentence should be commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim and consistent with sentences for similar crimes by similar offenders.

Just taking that one statement I have to say that I have sentenced people for gross sexual imposition on a number of occasions. Never have I had — while the crime might be gross sexual imposition, I've never had a case where the victim was two years old and I can't consider this as a similar crime by a similar offender because in this case it's — even though the crime is the same — it's dramatically made different by the victim's age and then also, by the other end of the spectrum, by the offender's age.

. . .

In weighing the factors outlined whether the conduct is more serious under R.C. 2929.12 (B), I do find that the conduct is more serious in that the injury was exacerbated by the victim's physical condition or mental condition or age. If you believe fully the statement of the defendant, the physical condition or mental condition of the child at that time was that the child was asleep and that he was two years old.

I do find that — and this is one of the — this is one of the factors that I'm to consider, whether the victim suffered serious physical, psychological or economic harm. I mean, you could make an argument that they're paying for the, you know, the behavior specialist, that there is economic harm to the parents.

Psychological harm, they started documenting behavioral issues with their son prior to the disclosure by the defendant and they were concerned about behavior, so the victim in this case in fact did suffer from the behavior of the defendant.

I do find that — and I think you can make this argument — that the offender held a position of trust and that the offense in this matter was related to that position. She was the care provider for a toddler. I do find that the offender's occupation facilitated the offense.

. . .

And, quite frankly, in looking at those, whether the conduct is more serious, those findings are greater than most findings that I find in many cases.

Then I'm to look at whether the conduct is less serious under 2929.12(C). I don't find that any of those factors exist. She did not — the victim obviously did not induce or facilitate the offense, I do not find that the offender acted under strong provocation, I do not find that

the offender did not cause or expect to cause physical harm to persons or property and I don't find that substantial grounds exist to mitigate the offender's conduct.

I'm also to consider the recidivism factors, whether recidivism is more likely or less likely under 2929.12 (D) and 2929.12 (E).

With regard to whether recidivism is more likely, I don't find that any — that this offense occurred while she was on bail or awaiting sentencing, or on community control or PRC or after PRC was unfavorably terminated. I cannot make the finding that there is a history of criminal convictions or juvenile delinquencies. In fact, Ms. Tinsley has no prior record.

The offender has not responded favorably, I don't find that she has not responded favorably to sanctions previously imposed in an adult or juvenile court because she doesn't have a record. There's no finding of that.

I do not find that there is a pattern. I don't see a pattern of alcohol or drug use related to this offense and that she doesn't acknowledge that. That's not part of this.

The final factor regarding if the offender shows genuine remorse, this case is unusual in that the offender, Ms. Tinsley, is actually the reporting person of her own behavior.

. . .

I don't know how to kind of work that in. You can say that that is showing genuine remorse, you can say that she doesn't show genuine remorse. I don't find that factor persuasive in most cases anyway on either end.

(Tr. 20-25.)

{¶ 10} The court then stated that it reviewed all these factors to aid her decision regarding the presumption of probation for fourth-degree felonies. The court ultimately concluded that a prison sentence was warranted and sentenced Tinsley to twelve months in prison and waived fines, fees, and costs. The court also

notified Tinsley that she would be subject to five years of postrelease-control supervision upon her release from prison. The court classified Tinsley as a Tier I child-victim sex offender.

{¶ 11} It is from this order that Tinsley appeals, raising the following single assignment of error for review.

> **Assignment of Error**: The trial court's sentence, and its consideration of principles and purposes of felony sentencing under R.C. 2929.11, was contrary to law.

## II. Law and Analysis

{¶ 12} When reviewing felony sentences, R.C. 2953.08(G)(2) provides, in part, that the appellate court's standard of review is not whether the sentencing court abused its discretion; rather, if this court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code" or (2) "the sentence is otherwise contrary to law," then we may conclude that the court erred in sentencing. *See also State v. Marcum*, 2016-Ohio-1002.

{¶ 13} We have recognized that the "clear and convincing standard" is "highly deferential, as it is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings." *State v. Venes*, 2013-Ohio-1891, ¶ 21 (8th Dist.).

**{¶ 14}** A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *State v. Sharp*, 2022-Ohio-2274, ¶ 17 (8th Dist.), citing *State v. Pawlak*, 2016-Ohio-5926, ¶ 58 (8th Dist.). Tinsley specifically argues that the court failed to comply with R.C. 2929.11(A) and (B).[1] As a result, our discussion will address these statutory provisions.

**{¶ 15}** Under R.C. 2929.11(A), a felony sentence shall be "reasonably calculated" to achieve three "overriding purposes": (1) "protect the public from future crime by the offender and others"; (2) "punish the offender"; and (3) "promote the effective rehabilitation of the offender using the minimum sanctions the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." Additionally, under R.C. 2929.11(B), the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

**{¶ 16}** We note that while the sentencing court must consider the R.C. 2929.11 purposes and principles of sentencing and the R.C. 2929.12 sentencing

---

[1] Tinsley did not face a mandatory prison sentence nor mandatory community-control sanctions for the fourth-degree felony she pled guilty to, rather the trial court had the discretion to sentence her to either sanction under R.C. 2929.13.

factors, the court is not required to make specific findings on the record that it considered the factors, even when imposing more than the minimum sentence. *State v. Bridges*, 2019-Ohio-1769 ¶ 11 (8th Dist.), citing *State v. Keith*, 2016-Ohio-5234 (8th Dist.), and *State v. Rouse*, 2019-Ohio-708 (8th Dist.). The court's consideration of the factors is presumed unless the defendant affirmatively demonstrates otherwise. *State v. Wright*, 2018-Ohio-965, ¶ 16 (8th Dist.), citing *Keith*. The "court's statement in its sentencing journal entry that it considered the required statutory factors is alone sufficient to fulfill its obligations under R.C. 2929.11 and 2929.12." *Id.*, citing *Keith*, citing *State v. Sutton*, 2015-Ohio-4074 (8th Dist.), and *State v. Clayton*, 2014-Ohio-112 (8th Dist.).

{¶ 17} In the instant case, Tinsley was convicted of a fourth-degree felony, which has a statutory range of 6-18 months in prison. Tinsley was sentenced to 12 months, which is within the statutory range. Additionally, at the sentencing hearing, the trial court began its analysis by acknowledging its requirement to comply with the purposes and principles of R.C. 2929.11, and as indicated above, it then read verbatim what those purposes and principles are.

{¶ 18} The court painstakingly went through its consideration and weighed the factors, finding that the offense committed was a sex offense, Tinsley held a position of trust as a care provider, which facilitated the offense, and the juxtaposition of Tinsley's age and as K.B.'s caregiver with K.B.'s age at the time of the offense. The court found that there was evidence of economic harm to the parents for having to pay for doctor's appointments and behavioral specialists and

psychological harm to K.B. The court further acknowledged that Tinsley had no prior criminal record, but stated, "I can't predict the future. I don't know if she still is taking care of children . . . it's possible she could be taking care of young children again." (Tr. 25-26.) Tellingly, the court stated on the record that it was going over all these factors to help decide if Tinsley should get probation, and in balancing all of these factors, the court found that the conduct in this case is more serious. Furthermore, the corresponding sentencing journal entry states that "[t]he court considered all required factors of the law" and "[t]he court finds that prison is consistent with the purpose of R.C. 2929.11." These statements, standing alone, are sufficient to meet the trial court's obligations under R.C. 2929.11 and 2929.12. *Sharp*, 2022-Ohio-2274, at ¶ 23 (8th Dist.). Thus, based on the foregoing, we find that the trial court considered the purposes and principles of felony sentencing set forth in R.C. 2929.11.

{¶ 19} Accordingly, the sole assignment of error is overruled.

## III. Conclusion

{¶ 20} Because Tinsely's sentence is within the statutory range and the trial court considered the statutory factors when imposing her sentence, we cannot say that Tinsley's sentence is clearly and convincingly contrary to law.

{¶ 21} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, P.J., and
ANITA LASTER MAYS, J., CONCUR