[Cite as *State v. Sampson*, 2026-Ohio-1381.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                  :

      Plaintiff-Appellee,                      :

                                No. 115478

      v.                                                :

LORINZO SAMPSON,                            :

      Defendant-Appellant.                  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 16, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-24-694656-A and CR-25-698527-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Liam E. Blake and Michael Timms, Assistant Prosecuting Attorneys, *for appellee.*

Mary Catherine Corrigan, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant Lorinzo Sampson ("Sampson") appeals his maximum-consecutive sentence of 36 months, which was imposed after he pled guilty, in two separate cases, to attempted having weapons while under disability

("HWWUD"), felonies of the fourth degree. In his appeal, Sampson asserts that the trial court was biased against him, that his sentence was contrary to law, and that he was denied his Sixth Amendment right to an attorney. After careful review of the record, we find no merit to Sampson's arguments and we affirm.

## I. Facts and Procedural History

{¶ 2} In May 2023, Sampson was sentenced to five years of community-control sanctions (also known as probation) in Cuyahoga C.P. No. CR-21-665077-A ("2021 case") after he pled guilty to an amended charge of attempted receiving stolen property, a first-degree misdemeanor, and was ordered to pay $7,500 in restitution.

{¶ 3} In June 2023, Sampson was sentenced to one year of community-control sanctions in Cuyahoga C.P. No. CR-22-674707-B ("2022 case") after he pled guilty to an amended charge of carrying a concealed weapon, a first-degree misdemeanor. In June 2024, Sampson agreed to extend community-control sanctions to June 27, 2025.

{¶ 4} Then in August 2024, while on community control, Sampson was charged in Cuyahoga C.P. No. CR-24-694656-A ("2024 case"), with a two-count indictment. Count 1 charged HWWUD and Count 2 charged tampering with evidence; both counts were third-degree felonies. Sampson pled not guilty, was declared indigent, and was assigned an attorney who withdrew shortly thereafter. In September 2024, the trial court assigned a new attorney.

{¶ 5} In January 2025, Sampson was charged in Cuyahoga C.P. No. CR-25-698527-A ("2025 case"), with a four-count indictment. The indictment

encompassed two separate incidents with the same victim. Count 1 charged felonious assault, a second-degree felony, with one- and three-year firearm specifications, as well as repeat-violent-offender and notice-of-prior-conviction specifications. Count 2 charged HWWUD, a third-degree felony. Count 3 charged domestic violence, a first-degree misdemeanor. Count 4 charged HWWUD, a third-degree felony. Sampson pled not guilty, was declared indigent, and was assigned the same attorney that he was assigned in September 2024.

{¶ 6} On February 19, 2025, prior to trial in the 2024 case, the State put the plea offer of attempted HWWUD on the record. The trial court then personally addressed Sampson and explained that any plea or conviction in the 2024 case would be a violation of his community-control sanctions in the 2021 and 2022 cases. The trial court answered all of Sampson's questions and entertained his repeated arguments regarding the status of his 2022 case. The trial court stated, "So, Mr. Sampson, I remember from your probation you were difficult with the Probation Department, you argued with me a lot about a lot of different things. I appreciate what you're trying to parse out but I'm telling you that this is what happened[,]" meaning that Sampson agreed to extend community control in the 2022 case in lieu of a violation hearing. (Tr. 8.) Nevertheless, Sampson continued to argue about the status of the 2022 case. The trial court again explained that they were there for trial on the 2024 case, not the community-control violations in the 2021 and 2022 cases.

{¶ 7} The trial court then explained the potential penalties if Sampson was convicted of the charges in the indictment, as well as the potential penalties if Sampson pled guilty to the reduced charge. During this exchange, the trial court questioned Sampson as to whether he had sufficient time to speak with his attorney regarding the plea offer and whether Sampson was satisfied with his attorney. Although Sampson stated that he had sufficient time to discuss the plea offer with his attorney, he stated that he was not satisfied with his attorney. When questioned about his dissatisfaction, Sampson stated that he expected a better plea offer. The court explained that the State determines the plea offer.

{¶ 8} Sampson then changed his mind and stated that he asked his attorney to file a motion to "lift the [probation] hold." (Tr. 11.) The trial court advised Sampson that his attorney did request that the hold be lifted; however, the court denied the request. The trial court explained that the request was denied because Sampson had been indicted in two more cases while on probation to the court. The court advised Sampson that he could accept the plea offer or go to trial but "[t]he fact that you don't like the outcome of the negotiation is not a reason to dismiss [your attorney]." (Tr. 11.) Sampson then began to argue that he posted bond and should be released.

{¶ 9} The trial court continued explaining Sampson's constitutional rights and inquired whether Sampson wanted to accept the plea offer or go to trial. Sampson chose a jury trial. The trial court then explained that he could bifurcate the HWWUD charge so a jury would not hear of his prior convictions. When

Sampson was not sure whether he wanted to bifurcate the HWWUD charge, the trial court allowed Sampson the lunch hour to make the decision. Sampson again argued about being released on bond. The trial court explained again why Sampson would not be released on bond.

{¶ 10} After lunch, Sampson indicated that he did not want to bifurcate the HWWUD charge and wanted to proceed with a jury trial. Stipulations were placed on the record, and evidentiary issues were argued. The trial court ruled in Sampson's favor on a motion in limine and then took a break for the parties to discuss another evidentiary issue, as well as for the trial court to distribute questionnaires to the jury. Upon returning from break, the court was advised that Sampson wanted to fire his attorney and hire new counsel. The trial court stated:

> Well, this is not happening. We're on the eve of trial. You've had forever to get representation. I'll tell you the last time that we had cases here, [you were], very good at delay. Very good at just trying to make things as difficult as possible. I have a jury up . . . I have a jury up. You had the opportunity to get counsel at any point in time, and now you're just waiting right before trial to try to delay this.

(Tr. 32-33.)

{¶ 11} Sampson then argued that his attorney failed to subpoena witnesses and file motions that he requested. The trial court explained that attorneys are bound by the law and ethical rules and just because Sampson wants something filed, does not mean that the motion should be filed. Then Sampson said he did not feel comfortable with his attorney. The trial court inquired as to why he did not hire an attorney. Sampson blamed the court for tying up his money, and then he blamed the clerk of courts for tying up his money. The trial court pointed out that Sampson

was on bond for five months in this case and did not hire an attorney, but now that the jury was called up and witnesses were present for trial, he now wanted to hire an attorney.

{¶ 12} Sampson then switched tactics to complain that his attorney failed to subpoena his witnesses. When questioned about the names of the witnesses, Sampson indicated there was one person. He stated, "[C]an I get my people subpoenaed? That's all I ask." (Tr. 39.) The trial court advised that his attorney could subpoena the witness and the court would issue a bench warrant if the witness did not appear. He then lamented, "I can't hire nobody to help him with my case?" (Tr. 39.) The trial court again expressed that Sampson was using this as a delay tactic like he had done in his previous cases before it, including not appearing on a previous trial date and constantly changing the subject to repeatedly delay things. Sampson claimed that he never missed a court date. The court read the docket where a warrant was issued. After allowing Sampson to indulge in further arguments, the trial court stated:

> You absolutely were [allowed to hire an attorney], but at this point it is trial date. We have a very full docket, I have trials scheduled up and down. This is the first time you have brought this up. We have a jury already here. Your attorney has been competent, has done everything that he is supposed to have done. You have not had a paid attorney in the past. I believe that you are doing this, based upon your record, for [the] purpose of delay. We are just about to start a jury trial. We've been here all morning.

(Tr. 41.) Sampson again argued about his witnesses and wanting to hire an attorney. The trial court relented and said:

> If you want to hire somebody before tomorrow you may do so, but at this point we're going to start with jury selection. If you want somebody else to actually try the case, go ahead, but they're not going to get extra time to get caught up on your case.

(Tr. 43.) Sampson continued to argue.

{¶ 13} The trial court then attempted to bring the jury into the courtroom. At this point, Sampson switched tactics and asked the prosecutor for a better plea offer. The court explained that the prosecutor had made three different requests to the supervisor and that the plea was not changing. Sampson then tried to negotiate a guarantee of probation if he pled guilty to the plea offer. The trial court explained that the court would not commit to a sentence because the court did not know the facts of the case. Sampson then asked for time to speak with his attorney about the plea, which the trial court allowed even though the jury was standing outside the door.

{¶ 14} Ultimately, Sampson pled guilty to the plea offer of attempted HWWUD. After the plea, the court discussed the next pretrial date on Sampson's 2025 case and explained that Sampson could hire an attorney in between, to which Sampson replied, "I'm good." (Tr. 52.)

{¶ 15} One week later, Sampson was back in court with the same appointed attorney addressing Sampson's motion to release the probation holds. Sampson's attorney presented arguments to release the probation hold, and Sampson was given the opportunity to argue himself. The trial court listened to the arguments and then explained to Sampson that the court would not lift the hold because two gun cases

were initiated against him while on probation to the court. Sampson proceeded to interrupt the court and argue his position. The motion was denied, and pretrial and trial dates were set.

{¶ 16} In July 2025, Sampson appeared before the court with a new attorney that he hired and pled guilty in the 2025 case to attempted HWWUD. Sampson waived a presentence investigation and requested to proceed to sentencing. He also waived a probable-cause hearing on his probation violations and admitted that he violated probation. Sampson's attorney made a case for probation and presented certificates indicating completion of various classes while in custody. The trial court questioned the authenticity of the certificates based on the appearance of the seals and the number of classes completed during the limited time Sampson was in custody.

{¶ 17} When Sampson was given an opportunity to speak, he proceeded to deny ever having a gun. The trial court advised Sampson that he had pled guilty in three cases wherein he possessed a firearm. Sampson then argued with the trial court, alleging that he never had a gun. After some back and forth, the trial court sentenced Sampson to time served on the 2021 and 2022 cases, as well as a $300 fine for both cases. The trial court imposed an 18-month prison sentence on the 2024 and 2025 cases. The sentences were ordered to be served consecutively. Sampson was advised of postrelease control, and the court gave Sampson 181 days of jail-time credit. Finally, the trial court advised Sampson that his sentence would

be modified to 16 months if the court received confirmation that Sampson had in fact completed the courses presented at the sentencing hearing.

{¶ 18} Sampson now appeals and raises the following assignments of error for review:

> **Assignment of Error I:** The trial court was neither neutral nor impartial.
>
> **Assignment of Error II:** The trial court's sentence was contrary to law.
>
> **Assignment of Error III:** The trial court violated [Sampson's] sixth amendment rights to the effective assistance of counsel when it failed to permit him to hire counsel of his choosing.

{¶ 19} For ease of discussion, we will address the assignments of error out of order.

## II. Law and Analysis

{¶ 20} In his third assignment of error, Sampson asserts that he was denied his Sixth Amendment right to effective counsel when he was denied the opportunity to hire counsel of his choice, citing *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). We find Sampson's argument unpersuasive.

{¶ 21} Initially, we note that Sampson's reliance on *Gonzalez-Lopez* is misplaced. In *Gonzalez-Lopez*, the defendant's retained attorney was denied pro hac vice admission based on alleged violations of the rules of professional conduct. The defendant proceeded to trial with local counsel and was convicted of a federal drug charge. On appeal, the Eighth Circuit Court of Appeals reversed the defendant's convictions holding that the district court erred by interpreting the

disciplinary rule and that refusal to admit defendant's attorney violated his Sixth Amendment right to paid counsel of his choosing and that this violation was not subject to harmless-error review.

{¶ 22} On appeal to the U.S. Supreme Court, the government conceded that the defendant was denied his right to counsel of choice but argued that the defendant was not prejudiced by his actual representation or that the error was harmless. The *Gonzalez-Lopez* Court upheld the circuit court's decision stating, "In light of the government's concession of erroneous deprivation, the trial court's error violated [defendant's] Sixth Amendment right to counsel of choice." *Id*. at 142. In addition, the Court held that "[t]he Sixth Amendment violation is not subject to harmless-error analysis." *Id.* Nevertheless, the Court stated that "[n]othing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them. . . . [Furthermore,] the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id*. at 151, citing *Wheat v. United States*, 486 U.S. 153, 159 (1988).

{¶ 23} The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [defense]." *Id*. at 159. However, the United States Supreme Court has also held "that an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *Id*., citing at 159. The Ohio

Constitution grants a corresponding right, as well as limitations. *State v. Maxwell*, 3 Ohio St.2d 92, 93 (1965).

{¶ 24} In the instant case, unlike the defendant in *Gonzalez-Lopez*, Sampson was represented by appointed counsel. On the day of trial, Sampson advised the trial court that he wanted to hire his own attorney. In other words, he was requesting a continuance on the day of trial. After much discussion, as outlined in the previous section, the trial court denied Sampson's request.

{¶ 25} We review a trial court's denial of a motion for a continuance for an abuse of discretion. *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). Likewise, we review a trial court's decision whether to remove court-appointed counsel for an abuse of discretion. *State v. Patterson*, 2014-Ohio-1621, at ¶ 19 (8th Dist.). A trial court abuses its discretion when it exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 26} In *Unger*, the Supreme Court noted that in deciding whether to continue a proceeding, a trial court weighs any potential prejudice to the defendant against concerns such as the court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. *Id.* More specifically, when evaluating a motion for a continuance, the court should consider whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel, and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the

defendant contributed to the circumstance which gives rise to the request for a continuance; and any other relevant factors. *Id.* at 67-68.

{¶ 27} When a defendant moves to disqualify his or her court-appointed counsel, it is the trial court's duty to inquire into the complaint and make it a part of the record. *State v. Pendergrass*, 2017-Ohio-2752, ¶ 11 (8th Dist.), citing *State v. Corbin*, 2011-Ohio-6628, ¶ 19 (8th Dist.). The inquiry need not be extensive. A brief inquiry will suffice. *Id.* The grounds for disqualification must be specific, not "vague or general." *Id.* at ¶ 12, citing *State v. Johnson*, 2006-Ohio-6404, ¶ 68. Additionally, in order for the court to discharge a court-appointed attorney, the defendant must show "'a breakdown in the attorney-client relationship of such magnitude as to jeopardize a defendant's right to effective assistance of counsel.'" *State v. Coleman*, 37 Ohio St.3d 286, 292 (1988), quoting *People v. Robles*, 2 Cal.3d 205, 215 (1970). Importantly, defendant's right to appointed counsel "'does not extend to counsel of the defendant's choice.'" *Patterson* at ¶ 20, quoting *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93 (1965).

{¶ 28} Moreover, the defendant's request for new counsel must be timely. And where the defendant makes a timely request for new counsel and has demonstrated good cause, the trial court's "failure to honor [the] timely request . . . would constitute a denial of effective assistance of counsel." *State v. Armstrong*, 2003-Ohio-6891, ¶ 22 (8th Dist.) However, when timing is an issue, the trial court may determine whether the defendant's request for new counsel was made in bad faith. *State v. Price*, 2015-Ohio-411, ¶ 18 (8th Dist.), citing *State v. Graves*, 1999

Ohio App. LEXIS 5992 (9th Dist. Dec. 15, 1999). A request for new counsel made on the day of trial "'intimates such motion is made in bad faith for the purposes of delay.'" *Price*, quoting *State v. Haberek*, 47 Ohio App.3d 35, 41 (8th Dist. 1988).

{¶ 29} Here, when Sampson was questioned why he wanted to hire a new attorney after five months of working with the court-appointed attorney, Sampson stated that he expected a better plea agreement. When the trial court explained that the State controls the plea offer, Sampson switched tactics and asserted that his attorney failed to file a motion to lift the probation hold. After the trial court explained that his attorney had requested that the hold be lifted, Sampson then argued that his attorney failed to subpoena his witnesses. When questioned about the alleged witnesses, Sampson suggested he had one that he did not name. The court explained that there was time to subpoena his witness and the court would issue a bench warrant if the witness failed to appear. Sampson then said he did not feel comfortable with his attorney.

{¶ 30} When denying his request for continuance, the trial court reasoned that Sampson had five months to hire his own attorney, that the court had a full docket, that the jury was outside the courtroom waiting, and that Sampson was simply requesting a continuance to delay trial. We agree with the trial court's assessment. It is clear from the record that Sampson was masterful at delay. Furthermore, the trial court indulged Sampson's every argument with patience and clear, thoughtful explanations. We also note that Sampson did not withdraw his plea when he hired his own attorney. Therefore, after careful review, we cannot say

that the trial court abused its discretion by denying Sampson's request for a continuance to hire a new attorney.

{¶ 31} Accordingly, Sampson's third assignment of error is overruled.

{¶ 32} In his second assignment of error, Sampson contends that his maximum-consecutive sentence is contrary to law because the trial court failed to consider the factors set forth in R.C. 2929.11 and 2929.12. We disagree.

{¶ 33} R.C. 2953.08 establishes the scope of appellate review for felony sentences. Pursuant to R.C. 2953.08(G)(2), an appellate court "'may reverse or modify a sentence only if the appellate court clearly and convincingly finds that the record does not support the findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or if the sentence is contrary to law.'" *State v. Burgos*, 2025-Ohio-1261, ¶ 11 (8th Dist.), quoting *State v. Stennett,* 2022-Ohio-4645, ¶ 12 (8th Dist.). However, R.C. 2953.08(G) "'does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12.'" *Id.*, quoting *State v. Jones*, 2020-Ohio-6729, ¶ 39. There is "'[n]othing in R.C. 2953.08(G)(2) [that] permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12.'" *Id.*, quoting *Jones* at ¶ 42.

{¶ 34} "A sentence is contrary to law if it falls outside the statutory range for the offense or if the sentencing court fails to consider the purposes and principles of sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12."

*State v. Angel*, 2022-Ohio-72, ¶ 8 (8th Dist.), citing *State v. Pawlak*, 2016-Ohio-5926, ¶ 58 (8th Dist.). Nevertheless, R.C. 2929.11 and 2929.12 are not factfinding statutes. *State v. Boyd*, 2020-Ohio-5181, ¶ 18 (8th Dist.). Furthermore, the sentencing court "has discretion to determine the most effective way to comply" with the purposes and principles of felony sentencing. R.C. 2929.12(A).

{¶ 35} Under R.C. 2929.11(A), a felony sentence shall be "reasonably calculated" to achieve three "overriding purposes": (1) "protect the public from future crime by the offender and others"; (2) "punish the offender"; and (3) "promote the effective rehabilitation of the offender using the minimum sanctions the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." Additionally, under R.C. 2929.11(B), the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 36} "R.C. 2929.12 provides a nonexhaustive and nonexclusive list of factors the court must consider when imposing a felony sentence." *State v. Riemer*, 2021-Ohio-4122, ¶ 16 (8th Dist.). Such factors relate to "the seriousness of the conduct," R.C. 2929.12(B) and (C), "the likelihood of the offender's recidivism," R.C. 2929.12(D) and (E), and "any other factors that are relevant to achieving th[e] purposes and principles of sentencing." R.C. 2929.12(A).

{¶ 37} Although the sentencing court must consider the R.C. 2929.11 purposes and principles of sentencing and the R.C. 2929.12 sentencing factors, the court is not required to make specific findings on the record that it considered the factors, even when imposing more than the minimum sentence. *State v. Tinsley*, 2024-Ohio-2450, ¶ 16 (8th Dist.). Further, a sentence is not contrary to law merely because the defendant disagrees with the way the trial court weighed and applied the R.C. 2929.11 and 2929.12 factors in fashioning an appropriate sentence. *State v. Reindl*, 2021-Ohio-2586, ¶ 25 (8th Dist.), citing *State v. Solomon*, 2021-Ohio-940, ¶ 115 (8th Dist.).

{¶ 38} Additionally, although the trial court must consider the sentencing factors in R.C. 2929.11 and 2929.12, R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *State v. Bryant*, 2022-Ohio-1878, ¶ 22. However, an appellate court may reverse a trial court's judgment if the court considered evidence outside the factors contained in R.C. 2929.11 and 2929.12 when imposing a sentence. *Id.*, citing *State v. Jones*, 2020-Ohio-6729, ¶ 31, 39.

{¶ 39} Finally, a statement in the sentencing journal entry showing that the trial court considered the required statutory factors, without more, is sufficient to fulfill a trial court's obligations under the sentencing statutes. *State v. Whitehead*, 2021-Ohio-847, ¶ 34 (8th Dist.), citing *State v. Seith*, 2016-Ohio-8302, ¶ 12 (8th Dist.). Moreover, "'[c]onsideration of the factors is presumed unless the defendant

affirmatively shows otherwise.'" *Id.*, citing *Seith* at ¶ 12 and *State v. Keith*, 2016-Ohio-5234, ¶ 11 (8th Dist.).

{¶ 40} Here, Sampson does not dispute that the trial court made the proper findings to impose consecutive sentences or that his sentence was outside the statutory range authorized for felonies of the fourth degree. He contends the record does not establish that the trial court considered the appropriate statutory factors, claiming that the trial court disregarded his education, family support, employment, and accomplishments in the county jail. Rather, Sampson asserts that the trial court had a personal vendetta against him. We disagree.

{¶ 41} In this case, the trial court expressly stated in the sentencing journal entry the trial court that it had "considered all required factors of the law" and found "that a prison is consistent with the purpose of R.C. 2929.11." (J.E., July 28, 2025.) Based on the foregoing, we find that the sentencing journal entry fulfills the trial court's obligations under both R.C. 2929.11 and 2929.12. Furthermore, although neither R.C. 2929.11 nor 2929.12 require the trial court to make findings or give reasons for the sentence it imposes, the trial court explained its rationale for imposing the sentence during the sentencing hearing. The trial court stated as follows:

> [Y]our history, your criminal history is not good. You have a violent history. You have firearms that you're not supposed to [possess]. You've repeatedly violated probation by just engaging in continuous criminal activity.

> And so, I do not believe that a probation sanction is appropriate in this case, and I do believe that a prison sentence is consistent with the principles and purposes of sentencing.

(Tr. 87.) Again, a sentence is not contrary to law merely because Sampson disagrees with the way the trial court weighed and applied the statutory factors in fashioning an appropriate sentence. Therefore, based on the record before us, we cannot say that the trial court failed to consider the statutory factors set forth in R.C. 2929.11 and 2929.12.

{¶ 42} Accordingly, Sampson's second assignment of error is overruled.

{¶ 43} In his first assignment of error, Sampson argues that the trial court had a "personal vendetta" against him. He asserts that the trial court's bias was evidenced by the fact that the trial court called him difficult, refused to lift the probation holds, and sentenced Sampson to a maximum-consecutive sentence in his two cases. Again, we find no merit to Sampson's argument.

{¶ 44} "Judicial bias" has been defined as "'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his [or her] attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" *State v. Dean*, 2010-Ohio-5070, ¶ 48, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus. This court has held that "'it is incumbent upon the judiciary to remain detached and neutral in any proceeding before it. . . . When determining whether or not a trial judge's comments were appropriate, a reviewing court must decide whether the remarks were

prejudicial to a defendant's right to a fair'" proceeding. *State v. Harris*, 2024-Ohio-246, ¶ 24 (8th Dist.), quoting *State v. Blazer*, 2010-Ohio-6367, ¶ 49 (8th Dist.). "'A judge is presumed to be unbiased and unprejudiced over the matters in which she or he presides.'" *Id.*, quoting *State v. Bonnell*, 2009-Ohio-2721, ¶ 12 (8th Dist.). And "'the appearance of bias or prejudice must be compelling in order to overcome the presumption.'" *State v. Eaddie*, 2018-Ohio-961, ¶ 18 (8th Dist.), quoting *State v. Filous*, 2016-Ohio-8312, ¶ 14 (8th Dist.).

{¶ 45} Sampson's argument that the trial court had a personal vendetta against him is not supported by the record. Rather, the record reveals that the trial court entertained every question and argument personally presented by Sampson with patience, including repeated arguments, even when it was clear that Sampson was only trying to delay trial. Further, the trial court's denial of Sampson's request to release the probation hold is not unreasonable or vindictive in light of the fact that Sampson was charged in two separate cases while on probation to the trial court. Moreover, Sampson was charged with cases involving guns when he was on probation and prohibited from being in possession of a firearm. Finally, the record reflects that the trial court indicated that Sampson's sentences would be reduced to 16 months if the court received confirmation that Sampson completed the courses presented at the sentencing hearing. Based on the foregoing, we find that Sampson has failed to overcome the presumption that the trial court was unbiased and unprejudiced. Nor do we find compelling evidence that the trial court was biased or prejudiced against Sampson.

{¶ 46} Accordingly, Sampson's first assignment of error is overruled.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

MICHELLE J. SHEEHAN, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR